The next case for argument, case number 20-1787, Eastern Arkansas, Gracie Foster, et al. v. Walmart, et al. Mr. Bennett? Good morning, and may it please the court. I'm Jim Bennett on behalf of Walmart. We are, on behalf of Walmart, appealing the denial of a motion to compel arbitration in this case. We believe that the district court's decision has holdings that are inconsistent with this court and Supreme Court jurisprudence in two primary broad categories. The first is a requirement that the plaintiffs involved, who are individual purchasers of gift cards, must have actually read or been provided actual notice of the specific terms and conditions, including by having a cashier read them to them or notify them at checkout. Is that what the district court required? It is one of the findings that supported the conclusion. If you look at the decision, the court actually makes reference to the fact that cashiers are not required to and do not read to the customers when they purchase it. It was part of the rationale that the court, I think, definitely used as the basis of a holding that there had to be actual notice and actual reading of the terms and conditions. The statement that I was referring to is Walmart cashiers do not ask plaintiffs to agree to the terms and conditions. That's one of the statements by the district court that we challenge repeatedly. Stating that as a fact is not stating it as a necessary legal requirement. I agree with that, and I believe that the actual legal requirement that the court did say is a requirement that the customers have actually seen the terms and conditions. The statement there would be that the plaintiffs did not see the terms of use, were otherwise aware that the terms existed, or saw the notice on the gift cards. I do believe that the fair reading of Judge Miller's decision is that there's a requirement that the terms and conditions be actually read. And then you can combine that with the second, what we would view as legal error in the opinion, which is a repeated reference to awareness and knowledge of the arbitration provision specifically, as opposed to the terms and conditions awareness. And we cite a series of cases from the Supreme Court on down that the terms and conditions at issue stand or fall, and you can't require specific notice of the arbitration provision itself. And I think that the trial court statement three different times that Walmart could overcome their arguments if we could show that they had actual or constructive knowledge of the arbitration agreement. Arbitration agreement is mentioned or arbitration provision is mentioned three times, and so our legal challenges to the rulings hinge in those two categories. The first being, is actual notice or actual reading required? And the second being, is there a requirement that they be specifically directed to the arbitration provision, or is it as we contend the law is that under the UCC which applies here that conduct can create an agreement. Can I ask you a question, though? I mean, this I understand you're focusing on what judge Miller said, but your arbitration agreement, at least under the terms and conditions says using or accessing the Walmart sites constitutes your acceptance of this arbitration provision. And my understanding now. Now, Judge Miller said that none. There's no evidence that any of the plaintiffs had access to what Walmart sites. I think that's wrong from the record. I think that three or four of them actually did. But if that's the way they buy your agreement, if that's the way they manifest the sense that aren't only those four subject to the arbitration agreement or five or however many access the website. We think that there's two ways that you manifest consent to this in this specific case, because the notice of the terms and conditions is actually on the card itself. We point out in our briefing that we have two alternative ways that there's acceptance here, one under a classic UCC situation where you go into the store and you buy it and you say that you're covered by the terms of use. And that's actually on the back of the card. And they allege that they the card is the card is not that's not a sale of goods. Yes, it's there's a case law we cite mostly out of the Southern District and Second Circuit where they've looked into it in the context of ADA requirements and otherwise. But there's clear case law that we cite Mendez being one that canvases the law saying that it is a UCC sale of goods. And if you look at the specific complaint in this case, Chief Judge Smith, you see that they actually pled to count specifically under the Uniform Commercial Code to breaches of warranty that they specifically cite to the UCC. So we do believe that it is the sale of sale of goods. And so getting back to Judge Strauss's question, we think we have two alternatives. Admittedly, a browse wrap type agreement where you do accept by going on the website. You know, that is basis and that is how the person manifests consent. And if that was our only basis, there might be some requirement that we we show that. I would refer the court, as you noted, to the error of Judge Miller's findings, you know, paragraphs 9, 10, 13, 42, 44, all of those reference plaintiffs going to the website and being bound. We do think that more would have if that was the dispositive question. So we to answer the question specifically, we think agreement happened at the point of sale because of our having it on the terms there. And then we think also it happened when they access the website under the term that the court identified for us. Think through this. Doesn't that create kind of a weird duty, which is you're saying that going to the website is what creates mutual assent. And you're saying that, well, the gift card points you to that. And I'm just trying to figure out how to reconcile that, because it doesn't it just doesn't appear to me that you have mutual assent until the condition precedent that Wal-Mart has set up, which is going to the website is fulfilled. So, we, if we accept the argument that buying the good is good enough, it seems to me that. It's creating a duty or assuming a duty on the part of everyone who buys a gift card that they will follow the instructions and go to the website. What's wrong with that line of reasoning? I think that it I think that there I think that what's wrong with it is that we're talking about two different scenarios where people use the gift cards. There's a scenario where people buy the gift cards and they're old school brick and mortar shoppers. And then they use them. But they're on inquiry notice that there are these terms and conditions and they accept that. And then, in addition, as the plaintiff specifically alleged in this case, you can buy these online. There's this allegation that you can buy them online. And so we have an online group of customers, too. And so I think that what it does is reflect a lot of what Judge Easterbrook was talking about in Hill versus Gateway, which is the practical realities of the modern world, which is that there's multiple types of consumers. And we want to make sure that we have both types covered. And so I would say that there isn't it's not a metaphysical chicken and egg problem. It's two different types of transactions that we're focused on. And we handled both of them in a way that we think is clear and certainly would put people on inquiry notice. Just we put it on the physical card. And then we also, for the online people, say, you know, if you buy it online and you shop online, and they specifically allege some people shop online and they do talk about e-loading of the cards, we've covered our basis totally. So I would say that it just reflects the diversity of how people use the cards as opposed to a problem. So then where we get to is I think the law is clear that inquiry notice or constructive notice is the standard under these set of circumstances. And where we see what we see here is a really strong state of the record for us in this circumstance, your honors. Walmart came forward with his declaration of its vice president in charge of these director in charge of these matters, which is Mr. Putnam. We put his declaration in the addendum at 14 and he describes how we go through this and what works and where they are. But then you contrast that as well with the allegations of the complaint, which make a series of very specific allegations about the fact that there are lawful contracts. And this goes to Judge Strasse's point. If you look at paragraph 950 at the point of sale, that's where they allege that the contracts were formed and that they form a lawful agreement. And we go through our complaint and our briefing go through all the places where they talk about going online and doing things and finding the terms and conditions. And we think that those are judicial admissions. So you take what the plaintiffs have alleged, showing clear access to the terms and conditions, a specific count dedicated to the terms and conditions and a breach of the terms and conditions and a description of what's on the card. You combine that with Mr. Putnam's affidavit or declaration that we put together that goes through all of the process. And then you look at the other side of the ledger, which is no evidence, no declarations. And all of the cases that the plaintiffs cite in response where they say, oh, well, someone should be let out of their allegations. Someone comes forward with an affidavit that says I didn't actually read these, I didn't access them, they were hard to find. In fact, when you look at what Judge Miller cited, he cited a case where they had a green website and then they had a green link to the terms and condition that was really hard to find. There's no record evidence of any sort of difficulty presented here. And so what we view it as having is an extremely strong state of the record for us with no evidence in response. And I don't think they could say that these were hard to find or difficult to find or they didn't see them because we think that they did. Certainly those that went online. But when you look at this Rule 56 standard that applies under the Section 4 of the FAA, what you look at is, did we come forward with evidence, which we did, in the form of their own admissions and our own declaration? And then did they come back with specific evidence in response to that? Counsel, I wonder whether the right answer here is I know you're saying there's not many facts, but I think there are some facts that, for example, how many people clicked on the website, which we don't know for sure. There's questions about how hard it is to find. There's questions about when some of these purchases occurred, when they went to the websites. I wonder if the answer is not to send this back down for a summary trial before Judge Miller, because this is a pretty scant order on a pretty difficult issue in my view. And I'm going to ask opposing counsel this, but I just want to give you a chance to respond to that idea. I know it was briefed as well. Certainly. I'm getting into my rebuttal time slightly, but I cover it. We view this as the Rule 56 process that's used all the time calls for certain things to be done. We did those, and there's actually nothing in response. It is a four-page, four-and-a-half-page order that is scant, but we think that we made our record and that they should essentially, they did not, and the time to come has passed. And you combine that with the standard of review from Moses Cone, which is anything in response needs to be treated in favor of arbitration. The failure to come forward with evidence at the time, we've made our record, and we think it's enforceable. And we don't think it's a close case, and that there's no reason to invoke the idea of summary trials. Of course, we do have that alternative request in our brief, and I'm sure that you noticed, but we don't think that there's any specific question on that here. And they certainly didn't meet their burden to come forward with specific evidence. We do cite a series of cases and say, once we come forward, they have to have specific evidence denying it. Be easy to have submitted a declaration saying, I didn't know you could go online or something like that. And I just don't think that that actually happened. And so we think that the case should be reversed. I'll reserve the rest of my time unless people have questions. I don't see any. Thank you, Mr. Bennett. Ms. Allman-Rhode? Good morning. I'm Sharon Allman-Rhode. I'm here on behalf of the plaintiffs. Ms. Allman-Rhode, could you get a little closer to your mic where your audio is weak? I'm here on behalf of the plaintiffs, and they filed a class action. It's not much better. Counsel, it's still not much better. They purchased gift cards. Is that helping? That's a little better, but it's still kind of weak. Here. Now, is it better? Yes. Okay. They purchased gift cards at brick-and-mortar stores. This was not an online transaction, not for anyone. And that's typically how the class is even defined, as people who purchased at the brick-and-mortar stores. And as soon as they bought them, they were supposed to have secret PIN numbers on them, but they had already been stolen. When they contacted customer service, they didn't get any relief. And the people that were mentioned in defense counsel's argument as actually accessing the website, they didn't access it before the transaction. It was after the transaction, they wound up that their money had disappeared. And the way to make a complaint to Walmart can be, you can call Walmart, or you can go online, and you can make a complaint online. So that's an after the fact, at the time that they had already tendered their money to Walmart. And those are the only ones that went on the website, and those are the only ones alleged to have gone on the website. The issue here is whether there was assent or constructive notice. And Judge Miller, in fact, does indicate that he viewed this from the standpoint of actual or constructive notice. He said there was no evidence of actual notice, and he found the constructive notice. This is the BrowseRap agreement. And calling it a BrowseRap agreement, that's basically saying that the parties have to go online in order to understand what their rights are. But the card itself on the back in the small print says that it's governed by terms that can be found on the website. Why is that notice insufficient? That is insufficient. There's a number of cases that found that type. All it simply says is see Walmart.com for complete terms. It doesn't say that they are binding themselves in any way, that they are making any type of agreement or relinquishing any rights at that point. It doesn't give them any information. But the next thing is, if you go to this Walmart.com, that's a whole other story. Walking through the Walmart.com website is no easy task. The gift cards, they don't instruct the purchaser that the terms on the website form the bargain. Also, the gift card only refers the purchaser generally to Walmart.com. The card does not refer the purchaser to a specific link or topic or name site or name document. The gift card uses the terminology terms and conditions. But that phrase, terms and conditions, is used generically in a broad sense. It's a small t, small c. It does not reference a website, a link, or a document. When a user accesses Walmart.com, the first page consists of a colorful distracting items for sale. At the bottom of the website, out of the line of sight, there's a list of some links in very small print. There's 35 links, at least on the current version. And that's, I believe, similar to what was present in 2016 to 18. Not a single one of those links is to gift cards. And not a single one is to the words terms and conditions. If you even look at that, whether generically or is referencing something. Nothing. Those terms do not show up at all. And there's case law. And we've cited within our brief that finds that that type of an agreement, purported agreement, is not sufficient notice. Walmart is arguing here it's terms of use. That's the terminology. That's the terminology that's at the bottom of the page. The Van Tassel case that we cite in our brief addressed that very issue, calling it customer service versus terms and conditions. That they have to make that leap and enter the mind, basically, of the defendant. What are they calling these various terms in order to find them? Even if they had attempted to do so. The word terms of use is no place on the gift card. And if you accidentally do stumble onto the terms of use, you find that it is a 20 single-spaced pages in 2016. In 2017, it's 30 single-spaced pages. And in 2019, there's two versions. And there are 31 single-spaced pages. The terms of use indicate that these govern your access to use of all Walmart sites. So if these people never go to the website, they never have agreed to any of these terms. There's nothing indicating how they manifest their dissent on this card. Or that they have to manifest dissent to these terms and conditions. I'm going to slightly change the facts because I think it's useful. Suppose on the back of the card, it not only says see the terms and conditions on the website or whatever the language is. That's not the point of the question. But actually included, made it easy to find and included a hyperlink to the exact terms and conditions. And then maybe even went on and said, you know, the terms and conditions underlying the gift card in particular can be found at this link. Is that case different in your view? Or is it still insufficient? Unless the terms and conditions are listed on the back of the card. I believe it's still insufficient. Because I don't believe they have to list all the terms and conditions. But they have to tell them that that is part of their bargain. They have to understand that that's part of the bargain. Just saying to look at something, to look at a website when they're making a brick-and-mortar transaction. That doesn't tell them that they have to, that there is a reason that they must look at that. That that's part of their agreement with Wal-Mart. There's nothing even under your version of the facts. What about for those who actually go to the website? Now I'm going back to our facts, the facts we have here. So if you go to the website, Wal-Mart's arbitration provision says that if you go to the Wal-Mart site. And I don't have the exact language in front of me, but I quoted it in response to Mr. Bennett. If you go to Wal-Mart sites, you are manifesting assent to the arbitration. What about the three or four people who may have gone to the website? Those three or four people that may have gone to the website, they went to the website after the transaction. They purchased the card. They did not go for the purposes of finding an agreement to consent to. They went and the only thing they did was contact customer service through the website. So if you don't know that you haven't manifested assent to this agreement because they have not constructively given you notice of it. I don't think that complaining after you've already been damaged would properly fall within consent. I think that there could be a challenge to that. But I think I think, you know, it would always be the case that the assent would come afterwards unless I guess you're on your phone at the time of sale or something. And you say, boy, I don't know that I want to buy this gift card. I'm going to check out these terms and conditions. And you go on the Wal-Mart site. I think I think the assent would always come afterwards. And I'm not sure that's a reason to say, no, we're not going to allow you to bind yourself to the arbitration agreement. Well, one of the problems with the assent coming afterwards here is these are non-refundable. They can't get their money back even if they change their mind. You know, an hour after they leave the store, they decide, oh, I shouldn't have bought this hundred dollar gift card. And they try to go back. They cannot exchange it. It's non-refundable. All of the cases that defendant relies on are basically shrink wrap cases, which was the first genesis sort of of a lot of these shrink wrap, click wrap and bounce wrap agreements. And that's where they send you the package. Maybe on the package they say there are terms and conditions. Look at them carefully. And that's true in some of the cases that they cited. There's Proceed D and the Hill case. And but the people unwrap the package. The terms and conditions are there. And those courts also hinged on the fact that he had 30 days then to read them, make up their mind and they could return them. It's right in the language of the Hill case. That they had the opportunity to read the terms and to reject them by returning the product. There's no opportunity to read the terms and reject them. And if these people were online users, this is still an inadequate notice because to navigate to this is so many steps that it's very difficult. In most of the cases of SPECT we cite in our brief. That's the first case that are presumably the first case that involved a browser app. And people are supposed to have conspicuous. It's supposed to be clear. It's supposed to have an opportunity. Emerge because it's you have to show and manifest dissent. Just, you know, going to the Web site doesn't manifest that you actually assented to it. Now, some people sent to it and they don't read it. They'll check the box. That's a different story. But here, just saying you come on our Web site, I get by the terms that Wal-Mart is suggesting. I can go on their Web site today. I can go out to Wal-Mart and slip and fall. Don't buy anything. And I go out there and I slip and fall. I if they can show that I looked at this Web site today, I would be bound by an arbitration agreement. Can I ask you to follow up with one question? I ask opposing counsel. It's a little unrelated. The question I just asked you, but I want to have to give you a chance to respond. This case is a mess. Factually, not all the plaintiffs are the same. For instance, one of the four people or five people who clicked on the Web site actually bought their card before the current version of the arbitration agreement went up on the Web site. At least that's from my review of the record. We have no delineation whatsoever in the district court's order between these various plaintiffs. I don't. We have no findings. Nothing else. How do you view the possibility of sending this down for a summary trial so that we can get a more nuanced order from the district court talking about these differences? And obviously, if the court ultimately viewed that the record was deficient, we would prefer that it would be remanded. But I really think that on its face, this agreement is not enforceable because they have to go on the site. If they go on the site, they never manifest a sense. The manifestation of assent is critical. And in every case, even in Hill, it's a manifest Hill and Proceed. It's a manifestation of assent because they kept the product for 30 days. They started using it. And they knew they had the terms and conditions at the time that they did it. There is no manifestation of a sense or ability to manifest a sense. The assent is an unknown to you. The moment I clicked on, well, Wal-Mart dot com. I have assented by there to own by all these terms abuse without any opportunity to read them to decide to abandon the Web site. I, I, I am supposedly by their argument bound to that. And that's not yet. Browse rep agreements have not been allowed in the majority of courts that have found them. And that's why defendants had to reach to shrink rep agreements, which are radically different in order to support its position here. You know, the things that they look at in these agreements are in in Van Tassel, they use customer service instead of conditions of use. Of course, they they aren't supposed to have to mind read what that is. And in Zappos, which is cited in our brief as well. The court denied the Web, the terms of use were accessible by an inconspicuous hyperlink buried in the middle to the bottom of each page. And it was in that case, it was on each page of the Web site. But it was so inconspicuous that the court found that it was not sufficient for constructive notice. In other reasons, then they if you have to go through multiple hyperlinks, as you do here, here, you also have the Jams Web site as part of the hyperlink. So they're constantly having to go through so many sites that it's just it's just not a an effective agreement, even if they had to access the Web site. And there's not effective notice to them in no place, are they ever apprised of the fact that I bought this card and I just agreed to all these terms. And if they had gone on Wal-Mart dot com, they would have needed a an attorney to direct them to find their way to the. To the gift terms and conditions and the gift terms and conditions did not at the time include arbitration, never did. They only in 2020, they've now added those terms specifically to the gift cards, but previously they never had those included. And the plaintiffs here. Did not have the opportunity to know what they were entering, allegedly entering into as Wal-Mart research that they did. Do you have any other questions? I don't see any. Thank you, Ms. Allman-Rhodes. Mr. Bennett, your rebuttal. Thank you very much, Your Honor. The idea of these summary trials, it is, as I stated earlier, that a plaintiff can't avoid compelled arbitration by generally denying facts upon which the arbitration rests. A party must identify specific evidence in the record demonstrating a material factual dispute for trial. And that's a universal standard in all of the courts. And we think that the state of the record shows that, especially when you look at their own allegations. Just to make sure the record is clear, and it sounds to me like the court's well aware of it, I mean, the back of the card actually says see Wal-Mart dot com for complete terms. If you go to Wal-Mart dot com, there is a section called terms that you click on. And so our case is different than their cases because we're saying, here's where you go, and here's the link, and here, when you click on it, we're not also burying the concept of arbitration. It has always, since it's been part of it, been in the introductory part in all bold type and in all cap type, saying important, this contains this arbitration provision in it. And so there's no suggestion, I think, that this could be considered buried in these at all. The first sentence of the gift card term says the other terms also apply. Counsel, this may not be the best question in the world, but has the site changed markedly or changed substantially in terms of what a consumer would see since the initiation of this litigation? I do believe that what counsel for the plaintiff said is true, which is the arbitration provision is now specifically referenced twice. But we've had changes during the time period from when people bought cards over time. I think we put three different versions in the record just to show the court what they were pre-2016, November 2017, 2018, and 2019. So there are differences, but we would say that ever since we had the arbitration provision, we've made it prominent. We've certainly made the terms prominent, but we've tried to give the court sense for that. Mr. Bennett, this is probably irrelevant, but what happens when someone actually reads the card and calls? We have call center people. You can read the card and call. We also have a customer service desk at every place. I call up and I say I want my $35, and you say first we go to arbitration. Oh, I'm sorry. You call with a complaint. Well, it is that that would be the outcome if nobody agreed. But we do have a customer service and reconciliation process, and if somebody calls, things tend to get worked out. That answers my next question, I guess. Is the remedy illusory or real? Well, we would say that given the fact of how many happy people we have that use our gift cards, which are a lot of people, that it's a very customer-friendly, satisfactory process. Thank you. Thank you. Thank you. Thank you, Mr. Bennett. The court appreciates both councils' presence before the court this morning and the argument that you have provided to us on the matter. We will take the case under advisement. With the exception of Mr. Bennett, council can be excused. Mrs. Almendore, we appreciate your presence. Mr. Bennett, welcome back. You are...